1

2

3

4

5

6

7

8

9

10

11

12

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| MARIA GONZALEZ, | No. 1:15-CV-03124-MKD |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| CAROLYN W. COLVIN, | |
| Acting Commissioner of Social Security, | ECF Nos. 14, 18 |
| Defendant. | |

13    BEFORE THE COURT are the parties' cross-motions for summary

14 judgment. ECF Nos. 14, 18. The parties consented to proceed before a magistrate

15 judge. ECF No. 6. The Court, having reviewed the administrative record and the

16 parties' briefing, is fully informed. For the reasons discussed below, the Court

17 grants Plaintiff's motion (ECF No. 14) and denies Defendant's motion (ECF No.

18 18).

19

20

1

## JURISDICTION

2      The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

3 1383(c)(3).

4

## STANDARD OF REVIEW

5      A district court's review of a final decision of the Commissioner of Social

6 Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

7 limited; the Commissioner's decision will be disturbed "only if it is not supported

8 by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

9 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

10 reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

11 (quotation and citation omitted).  Stated differently, substantial evidence equates to

12 "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

13 citation omitted).  In determining whether the standard has been satisfied, a

14 reviewing court must consider the entire record as a whole rather than searching

15 for supporting evidence in isolation.  *Id.*

16      In reviewing a denial of benefits, a district court may not substitute its

17 judgment for that of the Commissioner.  If the evidence in the record "is

18 susceptible to more than one rational interpretation, [the court] must uphold the

19 ALJ's findings if they are supported by inferences reasonably drawn from the

20 record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

1   416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

2   Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

3   404.1520(b); 416.920(b).

4       If the claimant is not engaged in substantial gainful activity, the analysis

5   proceeds to step two.  At this step, the Commissioner considers the severity of the

6   claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the

7   claimant suffers from "any impairment or combination of impairments which

8   significantly limits [his or her] physical or mental ability to do basic work

9   activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c);

10   416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

11   however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

12   §§ 404.1520(c); 416.920(c).

13       At step three, the Commissioner compares the claimant's impairment to

14   severe impairments recognized by the Commissioner to be so severe as to preclude

15   a person from engaging in substantial gainful activity.  20 C.F.R. §§

16   404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more

17   severe than one of the enumerated impairments, the Commissioner must find the

18   claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

19       If the severity of the claimant's impairment does not meet or exceed the

20   severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity." Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the

analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

If the claimant is capable of performing past relevant work, the Commissioner

must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f).

If the claimant is incapable of performing such work, the analysis proceeds to step

five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination,

the Commissioner must also consider vocational factors such as the claimant's age,

education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v);

416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§

404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other

1    work, analysis concludes with a finding that the claimant is disabled and is

2    therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

3          The claimant bears the burden of proof at steps one through four above.

4    *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

5    step five, the burden shifts to the Commissioner to establish that (1) the claimant is

6    capable of performing other work; and (2) such work "exists in significant

7    numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2);

8    *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ's FINDINGS

10          Plaintiff applied for Title II disability insurance benefits and Title XVI

11   supplemental security income on May 23, 2012, alleging onset beginning January

12   1, 2007.  Tr. 12, 218-26, 227-32.  The applications were denied initially, Tr. 72-99,

13   and upon reconsideration, Tr. 100-27.  Plaintiff appeared for a hearing before an

14   administrative law judge (ALJ) on October 15, 2013.  Tr. 35-71.  On November

15   27, 2013, the ALJ denied Plaintiff's claim.  Tr. 15-34.

16          As a threshold issue, the ALJ found that Plaintiff met the insured status

17   requirements of the Act with respect to her disability insurance benefits claim

18   through March 31, 2008.  Tr. 20.  At step one, the ALJ found that Plaintiff has not

19   engaged in substantial gainful activity since January 1, 2007.  Tr. 20.  At step two,

20   the ALJ found Plaintiff suffers from the following severe impairments: dysthymia,

cognitive disorder not otherwise specified (NOS), reading disorder, disorder of written expression, anxiety disorder NOS, myeloproliferative disorder, low-back pain status post-remote work-related injury, and diabetes.  Tr. 20.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  Tr. 22.  The ALJ then concluded that the Plaintiff has the RFC to perform light work, with the following additional limitations:

> she is limited to tasks that can be learned in 30 days or less, involving no more than simple work-related decisions and few workplace change [sic]; and she is able to interact with the general public on an occasional superficial basis.

Tr. 25.  At step four, the ALJ found Plaintiff could not perform her past relevant work.  Tr. 28.  At step-five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that Plaintiff could perform, such as product assembler, housekeeper, and hand packager.  Tr. 29.  On that basis, the ALJ concluded that Plaintiff is not disabled as defined in the Social Security Act.  Tr. 29.

On May 20, 2015, the Appeals Council denied review, Tr. 1-4, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

1

**ISSUES**

2   Plaintiff seeks judicial review of the Commissioner's final decision denying

3 her disability insurance benefits under Title II and supplemental security income

4 under Title XVI of the Social Security Act.  ECF No. 14.  Plaintiff raises the

5 following issues for this Court's review:

6     1.  Whether the ALJ properly found Plaintiff does not have a combination

7       of impairments that meets Medical Listing 12.05C;

8     2.  Whether the ALJ properly weighed the medical opinion evidence; and

9     3.  Whether the ALJ properly weighed Plaintiff's symptom claims.

10 ECF No. 14 at 4.

11 **A. Listing 12.05C**

12   Plaintiff contends that the ALJ erred in determining that Plaintiff did not

13 meet or equal Listing 12.05C.  ECF No. 14 at 4-10.

14   Listing 12.05C refers to intellectual disabilities.  To meet Listing 12.05C, a

15 claimant must demonstrate: (1) a valid verbal, performance, or full scale IQ score

16 of 60 to 70; (2) subaverage intellectual functioning with deficits in adaptive

17 functioning initially manifested before age 22; and (3) a physical or other mental

18 impairment imposing an additional and significant work-related limitation.

19 *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013) (citing 20 C.F.R. Pt. 404,

20 Subpt. P, App. 1, § 12.05C).

The ALJ found that one of the IQ scores in the qualifying range was not valid and the evidence did not demonstrate subaverage intellectual functioning with deficits in adaptive functioning which were manifested prior to age 22.  Tr. 23.  The parties do not dispute the ALJ's finding that Plaintiff has additional severe impairments, so the third element was met and not at issue.

### 1. Valid IQ Scores

Plaintiff contends the ALJ improperly rejected the results of the IQ tests in the record.  ECF No. 14 at 4-10.[1]

In August 2012, Dr. Dougherty conducted a psychological evaluation.  Tr. 491-519.  Plaintiff was given the Wechsler Adult Intelligence Scale Fourth Edition (WAIS-IV) battery of tests.  *Id.*  Plaintiff achieved, among other scores, a verbal IQ score of 68 and a full scale IQ score of 66.  Tr. 504.  Dr. Dougherty noted that Plaintiff demonstrated good effort on the tests and that the results were valid.  Tr. 494.  Moreover, in 2008, Dr. Bradley conducted a psychological evaluation.  Tr. 526-30.  He administered the Wechsler Adult Intelligence Scale Third Edition (WAIS-III) battery of tests, resulting in a verbal IQ score of 67, a performance IQ score of 85, and a full scale IQ of 74; scores Dr. Bradley considered valid.  Tr.

---

[1] The Court notes that the Commissioner did not defend the ALJ's rejection of the 2012 IQ score or the failure to address the 2004 IQ score.  *See* ECF No. 18 at 3-7.

526-29.  If Plaintiff's IQ scores are valid, the IQ criteria of Listing 12.05C would be met.

However, the ALJ determined that the 2012 IQ test score was not valid.  Tr. 24.  In rejecting the 2012 IQ test score, the ALJ noted:

> I note that Dr. Dougherty indicated that cognitive testing suggests that the claimants' memory was generally in the borderline range.  He noted that the claimant's intellectual test scores ranged from borderline to extremely low range with a Full Scale IQ of 66.  However, though her effort on testing appeared adequate, Dr. Dougherty indicated that her test scores were somewhat lower than her past vocational functioning, daily skills and interview performance would suggest.  He noted that the claimant could have had some cognitive decline, assuming her effort was adequate.

Tr. 25 (citing Tr. 497).

The Ninth Circuit has held that an ALJ may find an IQ score to be invalid. *See Thresher v. Astrue*, 283 Fed. Appx. 473, 475, n. 6 (9th Cir. 2008) (noting the Court "do[es] not doubt that an ALJ can decide that an IQ score is invalid"). However, the Ninth Circuit has "never decided what information is appropriately looked to in deciding [the] validity of IQ scores." *Id*. at n. 6.  Decisions from other courts indicate that the ALJ may rely on external evidence of a score's invalidity, such as improper testing conditions or a claimant's participation in activities inconsistent with the IQ score.  *See, e.g.*, *Wedge v. Astrue*, 624 F.Supp.2d 1127, 1131 (C.D. Cal. 2008) (collecting circuit cases identifying factors that may be considered in assessing validity of IQ scores); *Carter v. Colvin*, 2014 WL

7179852, *8-9 (E.D. Ca., Dec. 17, 2014) (collecting circuit cases identifying factors that may be considered in assessing validity of IQ scores).

Here, the ALJ's decision made no reference to Plaintiff's 2004 verbal IQ score of 67,[2] let alone explain a justification for rejecting it.  The decision therefore failed to articulate any basis for questioning the test score's validity.  Accordingly, the ALJ failed to properly consider whether Plaintiff satisfied the requirements for Listing 12.05C.  *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) (stating that an examining physician's opinion can be rejected only for specific and legitimate reasons based on substantial evidence in the record); *see also Thresher*, 283 Fed. Appx. at 474 (remanding the case where the ALJ failed to address, among other things, the validity of Plaintiff's IQ score); *see, e.g.*, *Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1056 (C.D. Cal. 2010) (finding ALJ erred when ALJ failed to address IQ score in the qualifying range).  This is particularly true where, as here, the ALJ appears to have credited Dr. Bradley's other opinions.  *See* Tr. 27 ("Although Dr. Bradley's evaluation is outside of the relevant period, his findings

_____

[2] When a claimant has different IQ scores for her verbal, performance, and/or full scale IQ score, the lowest score is used to evaluate whether the claimant meets or equals Listing 12.05C.  20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c); *see also Gomez*, 695 F. Supp. 2d at 1053.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 11

1  are consistent with the overall medical evidence of record and the claimant's

2  activities of daily living including her work history.").  Had the ALJ credited the

3  IQ score administered by Dr. Bradley, as he did the other findings, Plaintiff would

4  meet this element of Listing 12.05C.

5      As to the 2012 scores, the ALJ purported to rely on Dr. Dougherty's

6  comments to question the validity of the test, Tr. 24, but the ALJ failed to address

7  the fact that Dr. Dougherty found the test results valid.  Tr. 494.  The ALJ

8  appeared to have misunderstood Dr. Dougherty's caveats and comments regarding

9  the validity of Plaintiff's 2012 IQ scores.  While the ALJ is charged with

10 interpreting the evidence, *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989),

11 the ALJ's conclusions must be based on the actual evidence and not on a

12 misinterpretation or overstatement of the evidence.  Here, the ALJ noted no

13 additional factors than those noted by Dr. Dougherty, who found the 2012 IQ

14 scores to be valid.  As such, the ALJ did not identify any reasons, let alone

15 sufficient reasons, for rejecting Dr. Dougherty's medical opinion that the 2012 IQ

16 scores were valid.  Moreover, rejection of the 2012 IQ scores without identifying

17 any additional reasons than those considered by Dr. Dougherty is inconsistent with

18 the ALJ's statement that he "give[s] significant weight to the opinion of Dr.

19 Dougherty at Exhibit 13F," which exhibit includes the IQ scores.  Tr. 28.

20

In addition, in discussing the discrepancy between Plaintiff's functioning and her IQ score, Dr. Dougherty commented that Plaintiff might have been suffering some cognitive decline.  Tr. 24-25.  The ALJ relied on this statement in rejecting the 2012 IQ score.  Tr. 25.  Here, Dr. Dougherty did not have access to Plaintiff's 2004 IQ scores.  However, the ALJ did have access to the 2004 scores, demonstrating that Plaintiff's verbal IQ score remained fairly consistent over the eight year period.  Although Plaintiff's full scale IQ score was 74 in 2004 and 66 in 2012; her verbal IQ score was 67 in 2004 and 68 in 2012.  Failing to assess the consistency between the 2004 and the 2012 verbal IQ scores, when relying on a theory of cognitive decline, was error.

### 2. Adaptive Deficits Prior to 22-years of Age

The ALJ found no evidence that Plaintiff suffered from subaverage intellectual functioning with deficits in adaptive functioning manifested before age 22.  Tr. 23.  As evidence in support of her claim, Plaintiff presented her IQ scores, discussed *supra*, and her testimony that she received special education services in high school.  Tr. 46.  Assuming her testimony was accurate, the ALJ found Plaintiff's special education history could not establish deficits in adaptive functioning because there was no explanation for her placement in such classes.  Tr. 23.  Moreover, the ALJ found Plaintiff's steady work history during the relevant time suggested any such deficits were minimal.  Tr. 23.  Accordingly, the

ALJ found insufficient evidence that Plaintiff manifested any significant deficits in adaptive functioning prior to age 22.  Tr. 23.

First, Plaintiff's contends that her IQ scores in the qualifying range lead to a presumption of intellectual disability onset prior to age 22, satisfying the first two prongs of Listing 12.05C.  Here, if Plaintiff's IQ scores are valid, then some circuits would apply a rebuttable presumption that her intellectual disability manifested itself prior to age 22 based on the concept that IQ is a stable attribute. *See, e.g.*, *Hodges v. Barnhart*, 276 F.3d 1265, 1268 (11th Cir. 2001) (IQ scores after age 22 satisfy the listing criteria and "create a rebuttable presumption of a fairly constant IQ throughout ... life"); *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001) ("Mental retardation is not normally a condition that improves as an affected person ages. ... Rather, a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning"); *Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F.2d 666, 668-69 (4th Cir. 1989).  Other circuits have been reluctant to adopt a *per se* presumption and require some evidence that the onset preceded age 22.  *Markle v. Barnhart*, 324 F.3d 182, 188-89 (3d Cir. 2003); *Foster v. Halter*, 279 F.3d 348, 354-55 (6th Cir. 2001).

The Ninth Circuit has not yet considered adoption of this rebuttable presumption.  *Fatheree v. Colvin*, No. 1:13-cv-01577-SKO, 2015 WL 1201669, at

1   *11 (E.D. Cal. Mar. 16, 2015).  Nonetheless, district courts in the Ninth Circuit

2   have applied the presumption.  *See Robinson v. Comm'r of Soc. Sec.*, No. 2:14-cv-

3   0051-KJN, 2015 WL 925609, at *4 (E.D. Cal. Mar. 2, 2015) (collecting cases

4   adopting rebuttable presumption); *see also Brooks v. Astrue*, No. 3:11-CV-01252-

5   SI, 2012 WL 4739533, at *6 (D. Or. Oct. 3, 2012) (collecting District of Oregon

6   cases).  *But see Clark v. Astrue*, 2012 WL 423635, at *5-6 (E.D. Cal. Feb. 8, 2012)

7   (declining to adopt rebuttable presumption, "especially in a situation where there

8   are glaring discrepancies in the IQ scores in the first place"); *Rhein v. Astrue*, 2010

9   WL 4877796, at *8 (E.D. Cal. Nov. 23, 2010) (declining to adopt rebuttable

10  presumption on grounds it would remove plaintiff's burden at step three).

11         The Court declines to adopt the presumption in this case.  This Court has not

12  credited as valid the 2004 and 2012 IQ scores, finding they need to be reviewed by

13  the ALJ relative to the entire record.  Second, these IQ scores were obtained

14  substantially after the age of 22.  In 2004, Plaintiff was 37 years old; in 2012,

15  Plaintiff was 45 years old.  Providers have noted there is a significant discrepancy

16  between her functioning and her verbal IQ score.  This discrepancy has not been

17  evaluated.  Finally, there was a significant disparity in portions of her IQ score

18  (full scale and performance) from 2004 to 2012.  Accordingly, the Court declines

19  to adopt a presumption given the procedural posture and the facts presented in this

20  particular case.

Second, Plaintiff contends that she satisfied the first prong of 12.05C by virtue of her history of special education.  ECF No. 14 at 10.  Special education classes may constitute evidence relevant to deficits in adaptive functioning contemplated by Listing 12.05C.  *See, e.g*., *Sorter v. Astrue*, 389 Fed. App'x 620, 622 (9th Cir. 2010).  Here, the ALJ found that Plaintiff's testimony was insufficient to establish deficits in adaptive functioning.  Specifically, the ALJ noted "although there is little reason to doubt the claimant was a recipient of special education services in high school, there are no school records to corroborate that assertion, or that would explain the precise reason for placement in special education cases, or the special services that were provided through her individualized education plan (IEP)."  Tr. 23.  Due to the scant evidence in the record, the ALJ did not error in declining to find that participation in special education classes was alone sufficient to demonstrate deficits in adaptive functioning prior to age 22.  *See id*. (noting the vagueness of the information regarding the special education classes was relevant).

Third, Plaintiff faults the ALJ for considering her work history in assessing any deficits in adaptive functioning.  ECF No. 14 at 5-6.  According to Plaintiff, the regulations prescribe that, "[i]f you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education,

1    and work experience." 20 C.F.R. § 404.1520(d).  Thus, she contends that the

2    ALJ's consideration of her work history was therefore improper.  ECF No. 14 at

3    5.[3]

4         The Court finds it was not error to assess Plaintiff's work history.  Plaintiff

5    incorrectly interprets the regulation.  The regulation relieves a claimant from the

6    burden of proving inability to work considering her age, education, and work

7    experience only after she establishes she suffers from an impairment or

8    combination of impairments that meet or equal a listing.  *Fanning v. Bowen*, 827

9    F.2d 631, 634 (9th Cir. 1987) (citing 20 C.F.R. § 416.920(d), *Bowen v. City of New*

10   *York*, 476 U.S. 467 (1986)).  At the time the ALJ considered Plaintiff's work

11   history, Plaintiff had not yet established that she met or equaled a listing.  To

12   establish she met Listing 12.05, she must establish a deficit in adaptive

13   functioning, which she acknowledges includes her ability to work.  ECF No. 14 at

14   6 (citing Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental

15   Disorders, 42 (4th Ed. 2000)).  Considering a claimant's prior work history in

16   determining whether the claimant suffered a deficit in adaptive functioning is also

17   _____

18   [3] The Court notes the inconsistency in Plaintiff's interpretation of the regulation.

19   Under Plaintiff's interpretation, the ALJ may not consider her education, which is

20   contrary to her request that the ALJ consider her special education classes.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 17

consistent with case law. *See, e.g.*, *Jones v. Colin*, 149 F. Supp. 3d 1251, 1260 (D. Or. 2016) ("Evidence that demonstrates deficits in adaptive functioning may be circumstantial."); *Pedro v. Astrue*, 849 F. Supp. 2d 1006, 1011-12 (D. Or. 2011) (claimant can rely on circumstantial evidence to demonstrate adaptive functioning deficits, including work history). Accordingly, the ALJ did not err in considering Plaintiff's work history to determine whether Plaintiff manifested deficits in adaptive functioning prior to attaining 22 years of age.

On remand, the ALJ should consider the validity of the 2004 and the 2012 IQ scores, in light of the record as a whole. If deemed valid, the ALJ should consider the IQ scores in assessing whether Plaintiff demonstrated subaverage intellectual functioning with deficits in adaptive functioning manifested before age 22. It may be necessary to develop the record by calling a medical expert to assess the significance of the consistencies and variances of the IQ scores.

## B. Medical Opinion Evidence

Plaintiff next faults the ALJ for discounting the opinion of examining psychologists, Arch Bradley, M.Ed.; Jay Toews, Ed.D.; and Roland Dougherty, Ph.D. ECF No. 14 at 16-18.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

but who review the claimant's file (nonexamining or reviewing physicians)."

*Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

"Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

1      *1. Arch Bradley, M.Ed.*

2      Dr. Bradley opined that Plaintiff was not capable of skilled employment, like

3  nursing, based on her cognitive testing.  Tr. 530.  Based on the test results, Dr.

4  Bradley opined that Plaintiff would need to find employment which did not require

5  significant academic requirements.  Tr. 530.  The ALJ found Dr. Bradley's

6  opinions consistent with the overall medical evidence and Plaintiff's daily

7  activities, though the ALJ noted that Dr. Bradley evaluated Plaintiff in 2004,

8  outside the relevant period.  Tr. 27.

9      Despite finding Dr. Bradley's opinion consistent with the medical evidence,

10  Plaintiff contends the ALJ failed to account for all of the limitations Dr. Bradley

11  assessed.  ECF No. 14 at 17.  Dr. Bradley opined that Plaintiff would require extra

12  time, training, and supervision when learning new tasks or shifting duties, and

13  could learn if tasks are visual, but will take longer to master the details, the more

14  details that exist.  Tr. 529.  Plaintiff contends the ALJ failed to reject or accept

15  these opinions.  ECF No. 14 at 17.

16      Contrary to Plaintiff's contention, the ALJ accounted for the limitations Dr.

17  Bradley assessed.  To account for the difficulty Plaintiff experienced learning new

18  tasks, shifting duties, and mastering details, the ALJ limited her to tasks that can be

19  learned in 30 days or less, involving no more than simple work-related decisions

20  and few workplaces changes.  Tr. 25.  Additionally, the ALJ limited Plaintiff to

interacting with the general public on an occasional, superficial basis.  Tr. 25.  The

RFC adequately addresses the limitations Dr. Bradley assessed.  Plaintiff's

disagreement with the way the ALJ accounted for the limitations Mr. Bradley

assessed does not establish the ALJ rejected the limitations.  *See*, *e.g.*, *Turner v.*

*Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (finding ALJ

incorporated doctor's assessed limitations into the RFC even though the RFC did

not mirror the assessed limitations).  Where, as here, "evidence exists to support

more than one rational interpretation, [this Court] must defer to the

Commissioner's decision."  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,

1193 (9th Cir. 2004).

      *2.  Jay Toews, Ed.D.*

      In April 2007, Dr. Toews conducted a consultative examination of Plaintiff

and opined that Plaintiff was cognitively intact, her memory was relatively good,

and she could maintain attention and concentration over time.  Tr. 419-23.  Dr.

Toews found Plaintiff was able to comprehend and remember detailed instructions,

related with others readily, and was competent to make fairly detailed or complex

decisions and judgments in work-like settings.  Tr. 423.  Based on his assessment,

Dr. Toews opined that Plaintiff was capable of functioning in a wide variety of

lower, semi-skilled occupations.  Tr. 423.  Plaintiff's mood, affect, and anxiety, Dr.

Toews opined, would not constitute barriers to employability, even from customer service types of occupations.  Tr. 423.

The ALJ found Dr. Toews opinion consistent with his mental status exam findings.  Tr. 27.  But Dr. Toews did not have the benefit of objective results from the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV), which suggested some possible decrease in functioning.  Tr. 27.  Therefore, the ALJ accorded Dr. Toews' opinion only "some weight."  Tr. 27.

Plaintiff contests the ALJ's assessment of Dr. Toews' opinion because Dr. Toews did not have access to Plaintiff's IQ testing.  ECF No. 14 at 18.  The ALJ found this significant too, which is why he accorded Dr. Toews' opinion only "some weight."  Tr. 27.

Next, Plaintiff contends that the "ALJ's acceptance of Dr. Toews' opinion constituted factual error."  ECF No. 14 at 18.  Plaintiff cites deficits revealed in the mental status exam Dr. Toews administered as evidence inconsistent with his opinion that she could "perform detailed and complex tasks."  *Id.* (citing Tr. 423).  Specifically, Plaintiff references her inability to add and subtract serially, and "multiple problems with remote memory and fund of knowledge."  ECF No. 14 at 18.  But Plaintiff spelled "world" backwards and recited weekdays backwards without difficulty.  Tr. 422.  Her responses to essential similarity and differences indicated good conceptual ability.  *Id.*  Plaintiff was able to recall five digits

forward and three digits backwards. *Id.* She recalled four out of four words immediately, three out of four words after five minutes, and recalled the fourth word when given a cue. *Id.* Dr. Toews found Plaintiff "cognitively intact" though she "appear[ed] to be functioning in the low-average range of intelligence." Tr. 422. Here, based on the RFC's limitation to tasks that involve no more than simple work-related decisions, the ALJ did not fully credit Dr. Toews' evaluation. However, the medical evidence of record was susceptible to more than one rational conclusion, and therefore the ALJ's conclusion must be upheld. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The Court finds no error in the weight afforded to Dr. Toew's assessment.

### 3. Roland Dougherty, Ph.D.

Dr. Dougherty examined Plaintiff in August 2012. Tr. 490-98. While cognitive testing showed Plaintiff's memory in the borderline range, Dr. Dougherty observed that her scores were somewhat lower than her past vocational functioning, daily living skills, and interview performance would suggest. Tr. 497. He speculated that she may have undergone some cognitive decline, assuming her effort was adequate. Tr. 497. Based upon the discrepancy Dr. Dougherty identified between Plaintiff's IQ results and her good adaptive functioning, the ALJ concluded Dr. Dougherty questioned the reliability of Plaintiff's IQ scores. Tr. 28.

1    The ALJ accorded Dr. Dougherty's opinion significant weight.  Tr. 28.  The

2    ALJ noted that Dr. Dougherty had an opportunity to examine the Plaintiff and

3    administer objective tests.  Tr. 28.  The ALJ found Dr. Dougherty's opinion

4    consistent with the overall medical record and the Plaintiff's daily activities.  Tr.

5    28.  For those reasons, the ALJ accorded Dr. Dougherty's opinion significant

6    weight.  Tr. 28.

7        Plaintiff contests the ALJ's interpretation of Dr. Dougherty's opinion.  ECF

8    No. 14 at 18-19; ECF No. 19 at 10.  While the ALJ found Dr. Dougherty

9    questioned the reliability of Plaintiff's IQ scores, Plaintiff contends Dr. Dougherty

10   found the scores to be valid.  ECF No. 14 at 19 (citing Tr. 494).  The Court agrees

11   that the ALJ improperly interpreted Dr. Dougherty's opinion as questioning the

12   reliability of the IQ scores, consistent with the Court's ruling *supra*.  Here,

13   however, Plaintiff has not identified how the ALJ's misinterpretation of the

14   opinion resulted in an unsupported RFC.  Regardless of the interpretation of the IQ

15   scores, even Dr. Dougherty opined that Plaintiff could understand, remember, and

16   follow simple directions, Tr. 498, which is consisted with the RFC.  Thus, the

17   Court finds no error.

18   **C. Adverse Credibility Finding**

19       Plaintiff faults the ALJ for failing to provide clear and convincing reasons

20   for discrediting her symptom claims.  ECF No. 14 at 12-17.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 24

1    An ALJ engages in a two-step analysis to determine whether a claimant's

2 testimony regarding subjective pain or symptoms is credible. "First, the ALJ must

3 determine whether there is objective medical evidence of an underlying

4 impairment which could reasonably be expected to produce the pain or other

5 symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

6 "The claimant is not required to show that her impairment could reasonably be

7 expected to cause the severity of the symptom she has alleged; she need only show

8 that it could reasonably have caused some degree of the symptom." *Vasquez v.*

9 *Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

10    Second, "[i]f the claimant meets the first test and there is no evidence of

11 malingering, the ALJ can only reject the claimant's testimony about the severity of

12 the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

13 rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General

14 findings are insufficient; rather, the ALJ must identify what testimony is not

15 credible and what evidence undermines the claimant's complaints." *Id*. (quoting

16 *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)

17 ("[T]he ALJ must make a credibility determination with findings sufficiently

18 specific to permit the court to conclude that the ALJ did not arbitrarily discredit

19 claimant's testimony."). "The clear and convincing [evidence] standard is the most

20 demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r, of Soc. Sec. Admin.*, 278 F.3d

920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ provided specific, clear, and convincing reasons for finding that Plaintiff's statements concerning her alleged symptoms and limitations are "not entirely credible."  Tr. 25.

### 1. Inconsistent Statements

The ALJ found Plaintiff's inconsistent statements about why she stopped working undermined her claims of physical and mental symptoms.  Tr. 25-26.

In making a credibility evaluation, the ALJ may rely on ordinary techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record. *Id.* In assessing credibility, it is appropriate for an ALJ to consider inconsistent statements made by a claimant. *See Thomas*, 278 F.3d at 958-59 (ALJ may

consider inconsistent statements); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition in making a credibility determination).

The ALJ found Plaintiff made conflicting reports about the reasons she stopped working. Tr. 25. Plaintiff testified that she stopped working as a nurse's assistant primarily because coworkers were giving her a hard time. Tr. 49-50. But, in April 2007, Plaintiff told Dr. Toews "she had no interpersonal or physical problems with her jobs," and reported quitting her last job for another position. Tr. 421. In August 2012, she provided two different explanations during separate evaluations. Tr. 484, 493. In the first evaluation, she indicated she was not treated well at work and was picked on a lot. Tr. 484. Later that month, Plaintiff reported getting along well with others at work but stopped working due to stress. Tr. 493. Plaintiff's conflicting reports about why she stopped working, the ALJ found, undermined her credibility overall and specifically undermined her physical and mental symptom claims. Tr. 25.

Plaintiff contends these are not true inconsistencies because she consistently reported a combination of her impairments led to her inability to work. ECF No. 14 at 11. Plaintiff acknowledges that she told Dr. Toews she had "no interpersonal problems" at her job, but notes that she also reported feeling pressured by

registered nurses at the nursing home where she worked. *Id.* (citing Tr. 421). But the fact that Plaintiff made some statements consistent with her testimony does not resolve the fact that she also made statements inconsistent with her testimony. Plaintiff's statement that she had no interpersonal problems at her jobs, Tr. 421, conflicts with her testimony at the hearing that she quit because her coworkers were giving her "a hard time," and with the pressure she reported feeling from registered nurses. Tr. 49-50, 421. Her testimony is also at odds with her August 2012 statement that she got along well with others at work. Tr. 493. The ALJ permissibly relied on these inconsistencies to discredit Plaintiff's symptom claims. *Thomas*, 278 F.3d at 958-59. This was a clear and convincing reason to discount her testimony.

### 2. Objective Medical Evidence

The ALJ set out, in detail, the medical evidence regarding Plaintiff's impairments, and ultimately concluded that her allegations were inconsistent with the medical evidence. Tr. 26. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).

1    Plaintiff testified that she had low energy and tired easily.  Tr. 58-59.  She

2  reported that it took her longer to complete chores because her bones hurt and she

3  has diabetes.  Tr. 59.  Plaintiff complained of low-back and shoulder pain, and

4  reported that she was prescribed a walker because of problems she experienced

5  walking.  Tr. 60-61.

6    The ALJ reasonably concluded that the medical evidence does not support

7  such severe symptoms.  While Plaintiff reported low-back pain and fatigue in

8  2007, she was then 34 weeks pregnant.  Tr. 433-36.  From September 2007 until

9  June 2012, there were no medical visits, including emergency care, related to

10  Plaintiff's alleged pain and fatigue.  Tr. 26.  When she reestablished care in 2012,

11  Plaintiff denied any new symptoms of bone pain, though she reported chronic

12  symptoms of fatigue and generalized body pain.  Tr. 458-59.  Despite being

13  prescribed a walker, Plaintiff went to the exam walking, with no use of an assistive

14  device.  Tr. 482.  On physical examination, Plaintiff appeared in no acute distress

15  and looked comfortable.  Tr. 458.  Her exam findings were normal.  Tr. 458-59.

16  During a follow-up visit that same month, Plaintiff was again examined and her

17  findings were similarly normal.  Tr. 461.

18    In August 2012, Plaintiff saw Dr. Ho for a consultative evaluation of her

19  back pain and fatigue.  Tr. 482-88.  While Plaintiff indicated that she was aware

20  she was scheduled for back-related x-rays that day, Dr. Ho observed that Plaintiff

did not attend her x-rays as scheduled.  Tr. 487.  As a result, there are no objective images of Plaintiff's back in the record.  Tr. 26.  Upon physical examination, Plaintiff reported some pain but, the ALJ observed, she exhibited normal range of cervical flexion and 5/5 strength in her upper and lower extremities.  Tr. 26 (citing Tr. 486-87).  Dr. Ho found no evidence of paravertebral muscle spasm or tenderness.  Tr. 486-87.  The ALJ found the exam findings to be generally mild. Tr. 26.  Based on this record, the ALJ found Plaintiff's pain and fatigue complaints exceeded objective and physical exam findings.  Tr. 26.

At the outset, Plaintiff contends the ALJ failed to identify with specificity the symptom claims he found not credible.  ECF No. 14 at 12-13.  A finding that a claimant's testimony is not credible "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain."  *Bunnell*, 947 F.2d at 345-46.

> [A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination.  To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.

*Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).  Here, the ALJ recited the medical evidence and found it did not support Plaintiff's symptom claims regarding low energy, fatigue, low-back pain, and shoulder pain.  Tr. 26.  The Court finds the ALJ sufficiently specified the symptom claims not supported by objective evidence.

Next, Plaintiff contends the record does not support the ALJ's findings.  ECF No. 14 at 12.  In particular, Plaintiff contests the ALJ's description of Dr. Ho's examination.  *Id.*  While the ALJ noted that Plaintiff had normal range of cervical and lumbar motion, Dr. Ho's notes indicated some deficits in these regions.  *Compare* Tr. 26 *with* Tr. 486.  In addition, Plaintiff takes issue with the ALJ's decision not to recite Dr. Ho's finding that she, Plaintiff, tested positive for bilateral sitting and supine straight-leg raise testing.  ECF No. 14 at 12 (citing Tr. 486).  Plaintiff characterizes the ALJ's recitation of the medical evidence as "cherry picking," which he may not do.  ECF No. 14 at 12 (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)).

But an ALJ may rely on examples of the medical record which represent broader trends.  *Garrison*, 759 F.3d at 1018.  Here, the ALJ set out the medical record regarding Plaintiff's symptom claims in detail.  Tr. 26.  The fact that the ALJ neglected to recite Plaintiff's positive tests for bilateral sitting and straight-leg raise testing does not undermine the ALJ's decision.  Even considering these tests

and Plaintiff's limited range of cervical and lumbar motion, Dr. Ho found "no objective evidence supporting the claimant's medical problems." Tr. 487. She opined that Plaintiff's physical condition would "not impose any limitations for 12 continuous months." Tr. 487. Based on this record, the ALJ did not err in finding that the medical evidence did not support the degree of limitations alleged by Plaintiff.

### 3. Failure to Seek Treatment

The ALJ found the degree of limitation Plaintiff alleged was inconsistent with the minimal treatment she sought. Tr. 19. The medical treatment a Plaintiff seeks to relieve her symptoms is a relevant factor in evaluating the intensity and persistence of symptoms. 20 C.F.R. §§ 416.929(c)(3)(iv), (v). "[I]n assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.' " *Molina*, 674 F.3d at 1113 (quoting *Tommasetti*, 533 F.3d at 1039).

The ALJ acknowledged Plaintiff's symptom claims regarding her memory problems, depression, and anxiety. Tr. 26. The ALJ also noted Plaintiff's testimony that she took the written driver's test many times due to problems with understanding and, in high school, received special education instruction. Tr. 26 (citing Tr. 46-47). But, the ALJ found Plaintiff's lack of mental health treatment undercut the credibility of her symptom claims. Tr. 26. In August 2012, Plaintiff

reported her depression was usually an eight on a scale of ten.  Tr. 492.  But she

admitted she had not told her doctor about her depression and, at that time, she was

not on any medication for depression.  Tr. 27 (citing Tr. 492).  While Plaintiff

reported problems with anxiety since 2001, Plaintiff admitted in 2012 to only one

panic attack, which occurred in 2001.  Tr. 27 (citing Tr. 492).  The ALJ observed

that this report is also inconsistent with prior statements that she experienced a

panic attack in 2007.  Tr. 27 (citing Tr. 420-421).  More importantly, the ALJ

observed that Plaintiff was able to control her anxiety without medications and

indicated that her mental health symptoms were well controlled on Lexapro.  Tr.

26 (Tr. 420).  Plaintiff also reported feeling "she does not need behavioral therapy

or counseling."  Tr. 421.  With regard to Plaintiff's reading difficulties, Plaintiff

denied any functional consequences stemming from her reading problems.  Tr.

420.  The ALJ found the lack of treatment undermined Plaintiff's symptom claims.

Tr. 26.

        Plaintiff challenges the ALJ's finding because, she contends, she failed to

seek treatment because of her poor insight into her impairments.  ECF No. 14 at

13-14.  In the Ninth Circuit, it is generally inappropriate to consider a claimant's

lack of mental health treatment as evidence of a lack of credibility where the

evidence suggests lack of mental health treatment is part of a claimant's mental

health condition.  *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).  But,

1    when there is no evidence suggesting a failure to seek treatment is attributable to a

2    mental impairment, it is reasonable for the ALJ to conclude that the level or

3    frequency of treatment is inconsistent with the level of complaints.  *Molina*, 674

4    F.3d at 1113-1114.  Here, Dr. Toews found no indication Plaintiff suffered from

5    anxiety or depressive symptoms and, despite being referred by others for

6    behavioral therapy, Plaintiff declined to attend because "[s]he feels she does not

7    need behavioral therapy or counseling."  Tr. 310, 422.  Here, the record does not

8    demonstrate that her failure to seek treatment was the result of her mental health

9    impairment.[4]  Therefore, the ALJ permissibly relied on Plaintiff's failure to seek

10   treatment in discrediting her.  *Molina*, 674 F.3d at 1113-1114.

Plaintiff also contests the ALJ's finding that she was able to control her

11   anxiety without medications.  ECF No. 14 at 14.  Plaintiff contends "the cited

12   record stated that Prozac worsened her symptoms, and that 'She has been tolerating

13   Lexapro 20 mg daily well, but has been with frequent panic attacks.' "  *Id.* (citing

14   Tr. 310).  Plaintiff references the wrong record.  The ALJ cited to Dr. Toews'

_____

17   [4] Her failure to seek mental health treatment is in fact consistent with her not

18   seeking medical treatment for her back impairment from 2007 to 2012 and her

19   failure to obtain the back-related x-rays for which she had an appointment and

20   failed to attend.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 34

report, in which she reported that she controlled her anxiety without medication. Tr. 420.  Even the record to which Plaintiff cites indicates that Plaintiff's anxiety/panic attack disorder is "[w]ell controlled with Lexapro."  Tr. 310.  This was another clear and convincing reason provided by the ALJ for discrediting Plaintiff.

### 4.  Inconsistent Daily Activities

The ALJ found Plaintiff's activities of daily living were inconsistent with disability.  Tr. 27.  A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see also Fair*, 885 F.2d at 603 (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations omitted).

Plaintiff is a single mother of four children. Tr. 40. She drives, cooks, cleans, shops in stores, cares for a dog, and cares for her children, one of which has special needs. Tr. 51-53, 276-79, 422, 433, 484, 496. The ALJ found these activities "require persistent effort, judgment, and exertional capacity consistent with what is required to maintain employment." Tr. 27. *See Rollins*, 261 F.3d at 857 (Plaintiff's ability to care for young children without help undermined claims of totally disabling pain).

Plaintiff contests the ALJ's finding on two grounds. First, Plaintiff faults the ALJ for failing to specify why these activities demonstrate transferable work skills. ECF No. 14 at 15 (citing *Orn*, 495 F.3d at 639 ("The ALJ must make specific findings relating to [the daily] activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination")(internal citations omitted)). The ALJ explained that Plaintiff's daily activities "require persistent effort, judgment, and exertional capacity consistent with what is required to maintain employment." Tr. 27. The Court finds the ALJ sufficiently explained how Plaintiff's daily activities transfer to a work setting.

Second, Plaintiff contends her activities are not transferable to a work setting because she performs them part-time and with assistance. ECF No. 14 at 16. As evidence, Plaintiff cites to her testimony, in which she testified that her special-needs son mostly takes care of himself, her other children are in school, and that

they sometimes help her with chores.  Tr. 51-52.  But at the hearing, Plaintiff

testified that taking care of her children was similar to a full time job.  Tr. 53.  The

record might be subject to an alternative interpretation, but where the ALJ's

finding is supported by substantial evidence, the Court cannot second-guess the

ALJ.  *Thomas*, 278 F.3d at 959.

The Court finds the ALJ offered specific, clear, and convincing reasons

supported by substantial evidence to discredit Plaintiff.

## CONCLUSION

The ALJ's decision is not supported by substantial evidence and free of legal

error.  On remand, the ALJ should reconsider the step three findings, specifically,

reconsider the validity of the 2004 and 2012 IQ test scores in light of the medical

record and whether Plaintiff demonstrated subaverage intellectual functioning with

deficits in adaptive functioning that manifested prior to age 22.

**IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment (ECF No. 14) is

**GRANTED** and the matter is remanded to the Commissioner for additional

proceedings pursuant to sentence four.  42 U.S.C. § 405(g).

2.    Defendant's Motion for Summary Judgment (ECF No. 18) is

**DENIED**.

3.    An application for attorney's fees may be filed by separate motion.

1    The District Court Executive is directed to file this Order, enter

2    **JUDGMENT FOR THE PLAINTIFF, REMAND THE CASE FOR**

3    **FURTHER PROCEEDINGS**, provide copies to counsel, and **CLOSE** the file.

4    DATED this Wednesday, September 28, 2016.

5                    *s/ Mary K. Dimke*
                    MARY K. DIMKE
6            UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 38